[Cite as *State v. Montgomery*, 2021-Ohio-2500.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| | : |
| Plaintiff-Appellee, | : Case No. 20CA4 |
| | : |
| v. | : |
| | : |
| KEITH L. MONTGOMERY, | : DECISION AND JUDGMENT |
| | : ENTRY |
| Defendant-Appellant. | : |

_____

APPEARANCES:

Eric J. Allen, Columbus, Ohio, for Appellant.

Jason D. Holdren, Gallia County Prosecuting Attorney, Jeremy Fisher, Assistant Prosecuting Attorney, Gallipolis, Ohio, for Appellee.

_____

Smith, P.J.

{¶1} Keith L. Montgomery challenges the trial court's denial of his Motion to Withdraw Guilty Plea, filed January 30, 2020, in the Gallia County Court of Common Pleas. Mr. Montgomery also asserts the trial court's imposition of a maximum sentence on the basis that the trial court relied on inaccurate information in formulating his sentence. However, upon review of the record, we find no merit to Mr. Montgomery's arguments. Accordingly, we overrule his assignments of error and affirm the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On or about August 14, 2019, Keith L. Montgomery, "Appellant," was indicted on two counts:  Count One, Possession of Heroin, a violation of R.C. 2925.11(A); and Count Two, Trafficking in Heroin, a violation of R.C. 2925.03(A)(2).  Both counts are felonies of the second degree.  The indictment arose subsequent to a traffic stop initiated by Trooper Drew Kuehne of the Ohio State Highway Patrol on July 17, 2019, in Gallia County.  During the stop, Trooper Kuehne performed a *Terry* pat-down search of Appellant.

{¶3} Appellant was arraigned on August 16, 2019 and entered not guilty pleas.  Appellant requested and was granted a court-appointed attorney.  Appellant, through his counsel, filed the usual requests for discovery and request for bill of particulars.

{¶4} On September 30, 2019, Appellant's counsel also filed a motion to suppress.  Appellant raised several arguments, but chiefly asserted that Trooper Kuehne's search went beyond the limits of a *Terry* search and was actually an improper body cavity search.  The suppression hearing took place on October 7, 2019.  On October 24, 2019, the trial court overruled Appellant's motion to suppress.  Upon review of the video evidence of the traffic stop and the parties' arguments, the trial court found that Trooper

Kuehne did not violate Appellant's Fourth Amendment rights and did not conduct a body cavity search.

{¶5} On October 29, 2019, the day set for jury trial, Appellant withdrew his not guilty pleas and entered guilty pleas to both counts. Appellant signed a "Plea Form." The trial court found that Appellant was advised of his constitutional rights and that Appellant had made a knowing, intelligent, and voluntary waiver of his rights pursuant to Crim.R. 11. The trial court found Appellant guilty of both charged offenses. The trial court deferred sentencing and ordered a pre-sentence investigation (PSI).

{¶6} Appellant's case came on for sentencing on November 13, 2019. At that time, Appellant through counsel expressed his desire to withdraw his guilty pleas. Appellant then addressed the trial court as follows:

> Your Honor, I would to uh, I had a discussion with my lawyer um, from my understanding, I wouldn't be able to uh, appeal, uh, I don't, the suppression hearing or uh, my sentence. Uh, and due to the fact that I wouldn't be able to appeal I'd like to redraw my, withdraw my plea because uh, I would like to maintain some, some type of rights to, for my appeal.

{¶7} On November 20, 2019, Appellant's counsel filed a Motion to Withdraw Guilty Plea. The motion asserted the same suppression issues as

previously argued.  The motion also raised an issue of possible tampering

with evidence.  In the motion, Appellant asserted:

> A review of the CD indicates that a baggie of an unidentified substance was placed on the car hood.  It appeared to be one solid substance.  Yet, the results of the laboratory analysis resulted in the analysis of three units of this same evidence.  It is unclear how a baggie containing one substance because [sic] three units unless the first alleged evidence had been split into three units.  There is no documentation on how the baggie material was split or who did it.  The parties knew that an official proceeding or investigation [was] in progress * * *.  Yet it appears that the "evidence" with this defendant was broken up which would impair its value and possibly change the charges against the Defendant.

{¶8} The trial court conducted a hearing on the motion to withdraw

on November 25, 2019.  The parties made arguments but did not present

evidence.  On January 30, 2020, the trial court filed a detailed journal entry

concluding that Appellant did not present a reasonable and legitimate basis

for withdrawing his guilty plea.  Appellant's motion to withdraw his plea

was thereby denied.

{¶9} On February 4, 2020, Appellant's sentencing took place.  Given

that the two offenses which Appellant pled to were allied offenses, the State

elected to proceed to sentencing on Count Two, Trafficking in Heroin.  The

court considered the principles and purposes of sentencing, under R.C.

2929.11.  The court also considered the seriousness and recidivism factors

under R.C. 2929.12.  The trial court noted that Appellant was on federal parole at the time of his offenses in Gallia County, and that he had a history of criminal convictions, having served one state prison term and one federal prison term.

{¶10} The trial court imposed a mandatory minimum prison term of eight years and a maximum period of twelve years, along with a mandatory period of three years of Post Release Control upon his release from prison. Appellant was ordered to pay all costs of prosecution.  This timely appeal followed.

## ASSIGNMENTS OF ERROR

I.     THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S PRESENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA IN VIOLATION OF RIGHT TO DUE PROCESS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

II.    THE TRIAL COURT ERRED WHEN IT SENTENCED THE APPELLANT TO A MAXIMUM TERM OF INCARCERATION BASED UPON A NON-EXISTENT STATE PRISON TERM.

## ASSIGNMENT OF ERROR ONE

{¶11} Appellant asserts that his motivation to withdraw his guilty

pleas is not a mere change of heart. Appellant argues that his plea occurred prior to the chemical substance being tested in a laboratory and prior to the preparation of the report which revealed the results of the testing. Appellant pointed out that the substance confiscated from him was apparently divided into three separate units for testing. Appellant argues that additional investigation is necessary to find who broke the drugs into three separate units. Appellant asserts that if it could be proven someone tampered with the evidence, this could serve to undermine the credibility of the state's witnesses.

{¶12} In response, the State of Ohio argues Appellant's characterization of the chronology of the lab testing and report and his plea hearing is misleading. The State points out that it filed a supplemental response to discovery on September 23, 2019, containing the laboratory report of the analysis of the drugs. The State argues that Appellant had the laboratory report two weeks before the suppression hearing and over a month prior to trial.[1]

{¶13} The State's brief also recites and analyzes the various factors utilized by Ohio appellate courts which assist in appellate review of cases where it is contended that a trial court has abused its discretion in denying a

---

[1] The certificate of service on the supplemental disclosure indicates service on or about September 27, 2019. The suppression hearing was held October 7, 2019. Appellant's trial date, which ended up being a change of plea hearing, was October 29, 2019.

pre-sentence motion to withdraw plea.  The State concludes that Appellant

did not have a legitimate and reasonable basis to withdraw his plea.

## STANDARD OF REVIEW

{¶14} In *State v. Curtis,* 4th Dist. Meigs No.20CA6, 2021-Ohio-1145,

at ¶ 10, we recently observed that Crim.R. 32.1 states:  "A motion to

withdraw a plea of guilty * * * may be made only before sentence is

imposed * * *."  Although "a presentence motion to withdraw a guilty plea

should be freely and liberally granted[,] * * * a defendant does not have an

absolute right to withdraw a plea prior to sentencing."  *State v. Xie,* 62 Ohio

St.3d 521, 527, 584 N.E.2d 715 (1992).  " 'The decision to grant or deny a

presentence motion to withdraw a guilty plea is within the sound discretion

of the trial court and will not be reversed absent an abuse of that

discretion.' "  *State v. McCoy,* 4th Dist. Gallia No. 19CA4, 2020-Ohio-3088,

¶ 12, quoting *Xie* at paragraph two of the syllabus.  An "abuse of discretion"

is "an unreasonable, arbitrary, or unconscionable use of discretion" or "a

view or action that no conscientious judge could honestly have taken."  *State

v. Brady,* 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23.

{¶15} In *Curtis,* at ¶ 11, we recited the nine factors we consider

when reviewing a trial court's ruling on a presentence motion to withdraw a

guilty plea:

(1) whether "highly competent counsel" represented the defendant; (2) whether the trial court afforded the defendant "a full Crim.R. 11 hearing before entering the plea"; (3) whether the trial court held "a full hearing" regarding the defendant's motion to withdraw; (4) "whether the trial court gave full and fair consideration to the motion"; (5) whether the defendant filed the motion within a reasonable time; (6) whether the defendant's motion gave specific reasons for the withdrawal; (7) whether the defendant understood the nature of the charges, the possible penalties, and the consequences of his plea; (8) whether the defendant is "perhaps not guilty or ha[s] a complete defense to the charges"; and (9) whether permitting the defendant to withdraw his plea will prejudice the state.

*(Alteration in Howard.)* State v. Howard, 2017-Ohio-9392, 103 N.E.3d 108,

¶ 24 (4th Dist.), quoting *State v. McNeil,* 146 Ohio App.3d 173, 176, 765

N.E.2d 884 (1st Dist.).

" ' "Consideration of the factors is a balancing test, and no one factor is conclusive." ' " *Id*., quoting *State v. Jones,* 10th Dist. Franklin No. 15AP-530, 2016-Ohio-951, ¶ 14, quoting *State v. Zimmerman,* 10th Dist. Franklin No. 09AP-866, 2010-Ohio-4087, ¶ 13. " 'The ultimate question is whether there exists a "reasonable and legitimate basis for the withdrawal of the plea." ' " *Id*., quoting *State v. Delpinal,* 2d Dist. Clark Nos. 2015-CA-97 & 2015-CA-98, 2016-Ohio-5646, ¶ 9, quoting *Xie* at 527. "A mere change of heart is not a legitimate and reasonable basis for the withdrawal of a plea." *Id*.

## LEGAL ANALYSIS

{¶16} An examination of the above-listed factors supports the

conclusion that the trial court's decision to deny Appellant's presentence

motion to withdraw his guilty pleas was not unreasonable, arbitrary, or unconscionable. Therefore, the trial court did not abuse its discretion by denying Appellant's motion to withdraw his guilty pleas.

{¶17} In the trial court's entry denying Appellant's motion to withdraw his plea, the trial court discussed the chronology of the proceedings. The court noted that on October 29, 2019, after potential jurors had appeared and were prepared to serve, Appellant informed the court he wished to enter guilty pleas. At that time, the trial court engaged in a detailed 30-minute plea colloquy and accepted Appellant's guilty pleas. The trial court then dismissed the jury pool.

{¶18} In the entry, the trial court also summarized the Crim.R. 11 hearing, noting that the court discussed with Appellant the maximum potential penalties, indefinite sentencing, the nature and elements of the charges, and the mandatory prison term. The Court also discussed the effect of a guilty plea, informing Appellant that by pleading guilty he was waiving the right to appeal any adverse evidentiary ruling, such as the denial of his motion to suppress. The Court also inquired of Appellant, individually, whether he understood his rights and that he was waiving his rights. To all the inquiries, and notably, his appeal rights, Appellant acknowledged understanding.

{¶19} The trial court specifically inquired as to the factual basis for each element of the charges.  Appellant admitted to possession of heroin by stating:

Appellant:    "I had the drugs."

Trial court:  "As to the trafficking in heroin charge, what is it that you did that violates the law?"

Appellant:    "I, I possessed it and I was traveling with it and I had the heroin."

Trial court:  "Were you going to give it to someone else?"

Appellant:     "Yes, yes."

{¶20} The trial court also spent time going over each paragraph of Appellant's guilty plea form.  The court noted, as do we, that Appellant did not hesitate to ask questions when he had them or needed clarification.

{¶21} In the entry, the trial court also discussed the factors.  As to the first factor, the trial court noted Appellant's counsel had practiced law in Ohio since 1995 and had handled hundreds of felony cases.

{¶22} As to the second, third, and fourth factors respectively, the trial court noted that Appellant was given a full Crim.R. 11 hearing and a full hearing on his motion to withdraw his pleas.  The trial court also referenced its detailed decision denying the motion to withdraw as self-explanatory

evidence of full and fair consideration.  Upon review of the record, we would agree with these characterizations.

{¶23} As to the fifth factor, the trial court considered Appellant's motion to be filed within a reasonable time.  Given that he expressed his desire to withdraw his plea on the morning of his initial sentencing date, we find this factor debatable.

{¶24} As to the sixth factor, the trial court found Appellant's reasons for requesting withdrawal confusing.  We agree with this assessment.  When Appellant verbally explained his reasons, he indicated he would "like to maintain some type of rights * * * for my appeal."  However, his written motion focused on a newly asserted claim that the evidence may have been tampered with.

{¶25} As to this new claim, the trial court observed that Appellant would have had the opportunity to raise any allegation of tampering at the suppression hearing.  The trial court noted that the Defendant had the opportunity at the suppression hearing to question the officer about any discrepancies in the description of the drugs seized.  The description of the drugs contained in the report was in Defendant's possession well in advance of the suppression hearing.  The chronology in this case demonstrating the date of the State's disclosure of the report and the date of the suppression

hearing confirms that Appellant would have had ample time to raise the issue.

{¶26} In *State v. Minkner,* 2d Dist. Champaign No. 2006CA32, 2007-Ohio-5574, the defendant claimed he had not been provided with or given sufficient time to review important discovery materials. Minkner argued he did not have adequate information to knowingly, intelligently, and voluntarily enter his guilty pleas. On appeal, the 2nd District observed:

> The record demonstrates that the day Defendant entered his guilty pleas he was provided with copies of his cell phone records and the marked buy money that police used. The plea proceeding was delayed for approximately one hour while Defendant and his counsel reviewed that material, along with some audiotapes of the controlled drug buys made by the confidential informants. Prior to Defendant's plea, the State had supplied the defense with discovery packets. * * * During the plea hearing, Defendant never raised with the trial court the contention that he needed additional information or more time to review the discovery material before deciding whether he wanted to accept the State's plea offer. *Id.* at ¶ 13.

{¶27} The court further noted:

> Defendant's guilty pleas waived any and all constitutional infirmities that occurred prior to those pleas, including his right to discovery and any error associated with discovery violations, unless those violations rendered Defendant's pleas less than knowing, intelligent, and voluntary. *Id*. at ¶ 15.

{¶28} In this case, Appellant has not argued that his plea was not voluntarily made.  Here, Appellant had far more time to review discovery and raise any issues than did the defendant in *Minkner*.

{¶29} As to the seventh factor, the trial court concluded that Appellant understood the nature of the charges, the possible penalties, and the consequences of his plea.  The trial court spoke to Appellant directly. The court also discussed the "Plea Form" document paragraph by paragraph. Appellant repeatedly informed the court that he understood these issues. Our review of the plea hearing confirms this assessment.

{¶30} As to the eighth factor concerning a defendant's possible innocence or complete defense to the charges, the trial court's decision noted that Appellant admitted to the court that he possessed the required amount of heroin and intended to give it to another.  The trial court correctly concluded that Appellant has not asserted innocence nor has he a complete defense to the charges.  Had Appellant asserted innocence in his motion or on appeal, it would be contradicted by his statements at the change of plea hearing.  *See* e.g., *State v. Williams,* 3rd Dist. Logan No. 8-18-06, 2018-Ohio-3615, at ¶ 17; *State v. Hughes*, 3d Dist. Shelby No. 17-20-04, 2020-Ohio-4516, at ¶ 16.

{¶31} Finally, the trial court discussed the prejudice to the State of Ohio. While the State's brief does not emphasize prejudice, the trial court discussed the fact that a jury was called; the jurors received a nominal fee; and the jurors, their employers, and their families were inconvenienced. As with the timing of Appellant's motion, we find this factor is debatable.

{¶32} The trial court found that Appellant simply had a change of heart, opining that Appellant was attempting to delay a sentence to prison in Ohio and possible federal prison on a parole violation. After considering the above factors, the trial court found Appellant was given the most complete considerations possible and did not have a reasonable and legitimate basis for withdrawing his guilty pleas. We therefore find the record supports the trial court's conclusion. We find no abuse of discretion by the trial court in its decision to overrule Appellant's motion to withdraw his pleas. Accordingly, we find no merit to Appellant's first assignment of error. It is hereby overruled.

ASSIGNMENT OF ERROR TWO

{¶33} Appellant was sentenced to the Ohio Department of Rehabilitation and Correction for a mandatory minimum period of eight years and a maximum period of twelve years for Count Two. The sentencing judgment entry states: "The defendant has a history of criminal

convictions having served one state prison term and one federal prison term." Appellant challenges his sentence, arguing that the trial court erred by relying on incorrect information when enhancing Appellant's sentence. Appellant states that he has served one federal prison term, but he has not served one state prison term.

{¶34} In response, the State of Ohio observes that Appellant was sentenced within the prescribed range for a felony of the second degree. The trial court also considered the necessary factors when sentencing Appellant. The State argues that Appellant has a serious criminal history, served a lengthy federal prison term for similar conduct to this case, and was on federal probation at the time of the crime in this case. The State concludes that this court should overrule Appellant's second assignment of error.

STANDARD OF REVIEW

{¶35} The trial court imposed the maximum sentence. R.C. 2953.08 provides for appeals based on felony sentencing guidelines. *See State v. Cottrill,* 4th Dist. Ross No. 20CA3604, 2020-Ohio-7033, at ¶ 11. Pursuant to R.C. 2953.08(G)(2), an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either "that the record does not support the sentencing court's findings," under the specified statutory provisions, or "the sentence is

otherwise contrary to law." *State v. Mitchell,* 4th Dist. Meigs No. 13CA13, 2015-Ohio-1132, ¶ 11; *State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 37 (4th Dist.). "[C]lear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Thus, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds, by clear and convincing evidence, that the record does not support the sentence. *See State v. Walker,* 4th Dist. Gallia No. 19CA1, 2020-Ohio-617, ¶ 19.

## LEGAL ANALYSIS

{¶36} When Appellant was given an opportunity to address the court at sentencing, he stated:

> I noticed, uh, some of the things that he mentioned in my PSI, some of those things were, were, not accurate. They were overblown, but I do understand that I did commit a crime you know, so I'm not making no excuses by saying that I was a victim or nothing like that.

{¶37} Later at sentencing, the trial court asked the parties if there was

anything in the PSI that needed to be corrected or commented upon.  Neither

Appellant nor his counsel indicated affirmatively.  Appellant did not make

further comments.

{¶38} In this case, we do not have the PSI report before us.  R.C.

2951.03 allows the trial court to review or disregard an alleged factual

inaccuracy in a presentence investigation report if the defendant alleges at

sentencing that the report is inaccurate.  R.C. 2951.03(B)(5).  *See* S*tate v.*

*Sexton,*3d Dist. Union No. 14-B-25, 2015-Ohio-934, at ¶ 85.  However,

Appellant did not object to the alleged mistakes in the PSI report or to the

trial court's mistaken statements at sentencing, other than the vague

statement set forth above.

{¶39} As a general rule an appellate court will not consider an alleged

error that the complaining party did not bring to the trial court's attention at

the time the alleged error is said to have occurred.  This rule is a product of

our adversarial system of justice.  *See Sexton, supra.*  " 'Its purpose is

practical:  to prevent the defensive trial tactic of remaining silent on a fatal

error during trial with the expectation of demanding a reversal on appeal if

the verdict is guilty.' "  *Sexton, supra*, quoting *State v. Craft*, 52 Ohio

App.2d 1, 4-5, 367 N.E.2d 1221, 1224 (1977).  The rule is also consistent

with the structure of our court system.  An appellate court is not to be the

first court to decide an issue; it is to review decisions made by the trial court after the lower court has had an opportunity to hear the arguments of the parties. *See Sexton, supra.* " 'The traditional appeal calls for an examination of the rulings below to assure that they are correct, or at least within the range of error the law for sufficient reasons allows the primary decision-maker.' " *Sexton, supra,* quoting Carrington, Meador & Rosenberg, Justice on Appeal (1976) 2. *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992); *accord State v. Quarterman,* 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 15 (2014) (recognizing the "well-established rule" that failure to call an error to the attention of the trial court results in forfeiture of that error on appeal). This general rule is subject to Crim.R. 52, which gives the appellate court discretion to review the trial court's decision for plain error. *Quarterman, supra,* at ¶ 16.

{¶40} The standard of review under plain error "is a strict one." *See Sexton, supra,* at ¶ 86; *State v. Murphy,* 91 Ohio St.3d 516, 532, 747 N.E.2d 765 (2001). "[A]n alleged error 'does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise.' We have warned that the plain error rule is not to be invoked lightly. Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to

prevent a manifest miscarriage of justice.' " *Id.*, quoting *State v. Campbell,* 69 Ohio St.3d 38, 41, 630 N.E.2d 339 (1994), and *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraphs two and three of the syllabus. Under the plain error standard, "the defendant bears the burden of demonstrating that a plain error affected his substantial rights" and "[e]ven if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to 'prevent a manifest miscarriage of justice.' " (Emphasis sic.) *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 14, quoting *State v. Barnes,* 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002), and *Long,* 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. "Even constitutional rights 'may be lost as finally as any others by a failure to assert them at the proper time.' " *Murphy* at 532, 747 N.E.2d 765, quoting *State v. Childs,* 14 Ohio St.2d 56, 62, 236 N.E.2d 545 (1968).

{¶41} In *Sexton*, the appellant did not even allege that a plain error occurred or that his substantial rights had been affected in any way. The Ohio Supreme Court has recently refused to engage in a plain error review where the defendant did not make any attempt to demonstrate plain error on appeal. *See Quarterman* at ¶ 20-21. Therefore, under the benchmark provided by the Ohio Supreme Court that "[n]otice of plain error * * * is to

be taken with the utmost caution," *Murphy* at 532, 747 N.E.2d 765, and that

the defendant carries the burden "of demonstrating that a plain error affected

his substantial rights," *Perry* at ¶ 14, the *Sexton* court chose not to proceed

on plain error analysis, and also noted that no manifest miscarriage of justice

was apparent from the record.  Sexton's sentences fell within the applicable

statutory limit and were appropriate based on Sexton's extensive criminal

record.  *Sexton* at ¶ 88.  The *Sexton* court further observed that factual

inaccuracies in a PSI are not necessarily grounds for reversal as R.C.

2951.03 allows the trial court to disregard an alleged factual inaccuracy in a

presentence investigation report.  *See* R.C. 2951.03(B)(5); *State v. Mayor,*

7th Dist. Mahoning No. 07 MA 177, 2008-Ohio-7011, ¶ 3.

{¶42} In this case, Appellant made a vague dispute at sentencing

about the PSI report but did not formally object.  On appeal, he has not

alleged that a plain error occurred.  While arguing that the trial court's entry

and the PSI report incorrectly reflect he served a state prison term, we have

only the court's entry before us.  Even if we were to undertake a plain error

analysis, we would find no evidence that plain error occurred or affected

Appellant's substantial rights.

{¶43} However, there is evidence in the record to support the trial

court's sentence.  *See e.g. State v. Burnett,* 2d Dist. Clark No. 2013-CA-98,

2014-Ohio-4246, at ¶ 19.  Appellant was sentenced on Trafficking in Heroin, R.C. 2925.03(A)(2)(C)(6)(e).  The plea hearing transcript and guilty plea form reflect that Appellant was informed he was facing a sentence range on a felony of the second degree of two to eight years plus one half of the stated term for the indefinite maximum.  At sentencing he was given a mandatory minimum prison term of eight years and a maximum period of twelve years, along with a mandatory period of three years of post release control.

{¶44} The record indicates the trial court considered the record, defense counsel's oral statements, Appellant's oral statements, Appellant's record, the presentence investigation report, and other relevant information. The trial court also considered the principles and purposes of felony sentencing under R.C. 2929.11 and was guided by the overall purposes of sentencing, as well as the seriousness and recidivism factors under R.C. 2929.12.  The trial court also found Appellant was on federal parole at the time of the offense and had not responded favorably to sanctions previously imposed.

{¶45} A trial court's imposition of a maximum prison term for a felony conviction is not contrary to law if the sentence is within the statutory range for the offense and if the court considers both the R.C. 2929.11

purposes and principles of felony sentencing and the R.C. 2929.12 seriousness and recidivism factors. *See Cottrill, supra,* at ¶ 22. *State v. Mathias,* 5th Dist. Fairfield No. 19CA52, 2020-Ohio-4224, ¶ 9, citing *State v. Taylor*, 5th Dist. Richland No. 17CA29, 2017-Ohio-8996, ¶ 16, citing R.C. 2929.12 and *State v. Keith,* 8th Dist. Cuyahoga Nos. 103413 and 103414, 2016-Ohio-5234, ¶ 10, 16.

{¶46} In this case, we conclude the trial court did not erroneously rely on information in the PSI report and we find no basis to conclude that his maximum sentence is contrary to law. The record supports the trial court's findings and considerations in sentencing Appellant as it did. We therefore overrule Appellant's second assignment of error.

{¶47} Having found no merit to either of Appellant's assignments of error, we hereby affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. and Wilkin, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**